**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.***
**In re PROCEEDINGS FOR the REORGANIZATION OF A RAILROAD.**

**No. 70–347.**

United States District Court,
E. D. Pennsylvania.

July 2, 1974.

---

* Secondary debtors involved in this proceeding include: United New Jersey Railroad and Canal Co., Bky. 70–347–A; Beech Creek Railroad Co., Bky. 70–347–B; Cleveland, Cincinnati, Chicago & St. Louis Railway Co., Bky. 70–347–C; Cleveland & Pittsburgh Railroad Co., Bky. 70–347–D; Connecting Railway Co., 70–347–E; Delaware Railroad Co., Bky. 70–347–F; Erie and Pittsburgh Railroad Co., Bky. 70–347–G; Michigan Central Railroad, Bky. 70–347–H; Northern Central Railway Co., Bky. 70–347–I; Penndel Co., Bky. 70–347–J; Philadelphia, Baltimore & Washington Railroad Co., Bky. 70–347–K; Philadelphia & Trenton Rail Road Co., Bky. 70–347–L; Pittburgh, Youngstown and Ashtabula Railway Co., Bky. 70–347–M; Pittsburgh, Fort Wayne and Chicago Railway Co., Bky. 70–347–N; Union Railroad Co. of Baltimore, Bky. 70–347–O.

John De Podesta, and Carl Helmetag, Jr., Philadelphia, Pa., and Covington & Burling by Charles A. Horsky, Washington, D.C., for the trustees, Penn Cent. Trans. Co.

Jerome E. Sharfman and Stuart G. Meister, Washington, D.C., for U.S. Dept. of Trans.

Wilmer, Cutler & Pickering by William R. Perlik, Louis R. Cohen, Washington, D.C., for U.S. Railway Ass'n.

Goodman & Ewing by William H. Ewing, Philadelphia, Pa., and Mitchell L. Bach, Philadelphia, Pa., for Connecting Railway Co., John C. Kohl, trustee of Delaware Railroad Co. and Philadelphia, Baltimore & Washington Railroad Co., and Fairfax Leary, trustee of United N.J. Railroad & Canal Co.

MacCoy, Evans & Lewis by Mark Willcox, Jr., and Herbert G. Schick, Philadelphia, Pa., for Michigan Cent. Railroad Co., Pittsburgh, Youngstown & Ashtabula Railway Co., Philadelphia & Trenton Railroad Co., Northern Cent. Railroad Co., and Union Railroad of Baltimore.

Walsh & Frisch by E. Roger Frisch, New York City, for Beech Creek Railroad Co., The Cleveland, Cincinnati, Chicago & St. Louis Railway Co., The Cleveland & Pittsburgh Railroad Co., Erie & Pittsburgh Railroad Co., Penndel Co., Pittsburgh, Fort Wayne & Chicago Railway Co., and The Mahoning Coal Railroad Co.

David Berger, P.A. by David Berger, Philadelphia, Pa., for Penn Cent. Co.

Elkind, Lampson & Sable by Donald E. Lampson, New York City, for Walter J. Schloss Associates.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

Leon Leighton, New York City, for minority stockholders of Mahoning Coal Railroad.

Sharon, Pierson, Semmes, Crolius & Finley by William T. Finley, Jr., and Peter J. Levin, Washington, D.C., for Pennsylvania Co.

Richards, Layton & Finger, by Richard G. Elliott, Jr., Wilmington, Del., for Wilmington Trust Co., indenture trustee.

White & Case by P. B. Konrad Knake, Robert L. Clare, and Edmond C. Gregorian, New York City, liaison counsel for American National Bank & Trust Co. of Chicago, The Bank of New York, Bankers Trust Co., The Fidelity Bank, Girard Trust Bank, Irving Trust Co., Manufacturers Hanover Trust Co. of New York, Mellon Bank, N.A., Provident National Bank, Wilmington Trust Co., Bank of New Jersey, First Pennsylvania Banking & Trust Co., and Peoples Trust Co. of New Jersey, indenture trustees.

Proskauer, Rose, Goetz & Mendelsohn by Philip M. Hahn, New York City, for The Bank of New York, as indenture trustee.

Morgan, Lewis & Bockius by Edward B. Cloues, II, Philadelphia, Pa., for The Fidelity Bank.

Kelley, Drye, Warren, Clark, Carr & Ellis by William F. Sorin, New York City, for Manufacturers Hanover Trust Co.

Chatz, Sugarman & Abrams by Nicholas G. Dozoryst, II, Chicago, Ill., for American National Bank of Chicago.

Kenneth S. Levy, Deputy Atty. Gen., for the State of New Jersey.

MEMORANDUM IN SUPPORT OF FINDINGS AND ORDERS PURSUANT TO THE SECOND CLAUSE OF § 207(b) of the Regional Rail Reorganization Act of 1973 In the Secondary Debtors' Proceedings

FULLAM, District Judge.

Concurrently herewith, I have filed a Memorandum in support of findings and Order No. 1597 in the Penn Central proceedings, setting forth the reasons leading to my conclusion that the Regional Rail Reorganization Act of 1973 (hereinafter "RRRA" or the "Act") does not provide a process which would be fair and equitable to the Penn Central estate. Those same reasons justify the entry of similar orders in the cases of each of the Secondary Debtors. There are, however, certain issues uniquely applicable to the Secondary Debtors which require brief additional discussion.

▇ The Secondary Debtors contend that, having been found reorganizable, they are no longer "railroad in reorganization" as defined in § 102(12) of the Act. I do not believe the definition should be read so narrowly. While 12 of the 15 Secondary Debtors have been found to be reorganizable, there has not been (and, for the reasons discussed in my May 2, 1974 Memorandum in the Secondary Debtors' proceedings, cannot be) a finding that the public interest would be better served by having them reorganize under § 77 alone, than by recourse to the provisions of the RRRA. The definition must be read in conjunction with § 207(b). It seems reasonably clear that Congress intended to exclude from the applicability of the Act (1) railroads as to which the reorganization court finds both that they are reorganizable and that their reorganization outside the Act is in the public interest, and (2) in addition, those railroads as to which the Act fails to provide fair and equitable process. The Secondary Debtors do not fully qualify for exclusion under (1), and it is therefore necessary to determine whether they should be excluded under (2).

As to whether it is constitutionally permissible to require the Secondary Debtors to take stock in payment for their rail properties, the issues are substantially the same as in the Penn Central case. Of course, to the extent that a given Secondary Debtor can show present profitability, or even potential independent reorganizability, it might be necessary for the Special Court to arrive at higher values for particular properties than would be proper in the case of "incurables"; but this is a matter for the Special Court.

There are serious questions concerning the applicability of the Act to rail properties operated by Penn Central but leased from lessors which are not them-

selves in reorganization. While technically, such issues are not directly before this Court, it has been persuasively argued that the treatment of both Penn Central and the Secondary Debtors under the Act must take into account the treatment of Penn Central's non-bankrupt rail subsidiaries. For present purposes, it suffices to note that none of the arguments put forth by the government in any of these cases seems to establish any basis, other than the power of eminent domain, for acquiring rail properties of companies which are not themselves bankrupt.

█ I am inclined to agree with the contention of the Secondary Debtors that it would be unfair and inequitable to apply different standards of valuation to conveyances of rail properties from non-bankrupt lessors, than in the case of the Secondary Debtors or those similarly situated. But there is nothing in § 303(c)(1)(A) of the Act which would necessarily mandate the application of different standards.

██ A further problem of particular relevance to the Secondary Debtors arises in connection with the provisions of the Act dealing with the so-called "northeast corridor" from Boston to Washington. Virtually all of this property is owned by the Secondary Debtors and leased to the Penn Central. In response to contentions that Conrail would not be viable, the government, in the present proceedings, has taken the position that Conrail will be able to raise $500 million in cash by acquiring the northeast corridor properties and then selling them to Amtrak pursuant to § 601(d) of the Act. While the public purpose of these provisions of the statute is quite clear, the constitutionality of that approach seems particularly dubious. Certainly, if Congress were to give Amtrak the power of eminent domain, Amtrak could properly acquire the corridor properties. But I find it difficult to accept the theory that it is constitutionally permissible for the government to achieve that result by means of the RRRA, without providing the present owners of the property with cash or its equivalent. This feature of the statute provides a further reason, in the case of the Secondary Debtors, for finding that the Act fails to provide fair and equitable process.

Appropriate findings and orders have been entered in each of the Secondary Debtors' proceedings, in conformity with the views expressed herein.

### ORDER NO. 26

And now, this 1st day of July, 1974, in conformity with the requirements of § 207(b) of the Regional Rail Reorganization Act of 1973, this Court FINDS and hereby ORDERS:

1. That the Regional Rail Reorganization Act of 1973 does not provide a process which would be fair and equitable to the estate of the Secondary Debtor.

2. That the reorganization of the estate of the Secondary Debtor shall not be carried out pursuant to the Regional Rail Reorganization Act of 1973.

3. That this Finding and Order shall be stayed pending the final determination of the Special Court pursuant to the Act.